UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CHARLES GLOGOWER,**

    **Plaintiff,**

**v.**                                          **Case No: 8:14-cv-973-Oc-PRL**

**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

## ORDER

Plaintiff appeals the administrative decision denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income Benefits (SSI). Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is **AFFIRMED.**

### I.   BACKGROUND

For the sake of convenience, the administrative history, which is not in dispute, is copied from the Government's brief:

> Plaintiff protectively filed applications for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI) on September 27, 2010 (Tr. 187-88, 189-95). Plaintiff alleged disability beginning June 6, 1998 (Tr. 196). The Commissioner denied the applications initially and on reconsideration (Tr. 78-80, 82-84, 92-93, 94-95). After a hearing (Tr. 47-68), an administrative law judge (ALJ) found that Plaintiff was not disabled (Tr. 24-43). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6). The Commissioner's final decision is now subject to judicial review. See 42 U.S.C. §§ 405(g), 1383(c)(3).

(Doc. 25, p. 1-2).

At the time of the ALJ's decision, Plaintiff was 45 years of age. (Tr. 196). Plaintiff earned a GED, and has prior work experience as a server and driver. (Tr. 64, 199, 201, 204, 272). Plaintiff alleged disability due to bipolar disorder and attention deficit disorder. (Tr. 147).

Based on a review of the record, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 29). At Step Two, the ALJ found that Plaintiff had the following severe impairments: recurrent inguinal/umbilical hernias, bipolar disorder, personality disorder, and a history of substance abuse. (Tr. 29). The ALJ found, however, that Plaintiff's impairments did not meet or equal any listed impairment. (Tr. 30). The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform medium work with limitations. The ALJ concluded:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), with a frequent limitation for dealing with the general public and an occasional limitation for dealing with co-workers, but capable of performing routine tasks where little initiative is required.

(Tr. 31).

Based upon this RFC, and considering the testimony of the vocational expert, the ALJ found that Plaintiff was not capable of performing past relevant work as a server or driver, but could perform work that existed in significant numbers in the national economy, such as work as an auto detailer, greenhouse worker, and industrial cleaner. (Tr. 35, 65-66). Accordingly, the ALJ determined that Plaintiff is not disabled.

## II.     STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

- 3 -

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

**III.     DISCUSSION**

Plaintiff raises three primary arguments on appeal: (1) that the ALJ did not properly consider all the evidence regarding Plaintiff's borderline intellectual functioning; (2) that the ALJ did not properly consider all the evidence regarding Plaintiff's functional limitations in dealing with the general public and coworkers; and (3) that the ALJ failed to include all of Plaintiff's limitations in the hypothetical questions to the vocational expert.

**A.     The ALJ's Consideration of Plaintiff's Intellectual Functioning**

Plaintiff first argues that the ALJ erred by failing to properly consider the evidence regarding Plaintiff's intellectual functioning. Specifically, although Plaintiff acknowledges that the ALJ analyzed evidence relating to Plaintiff's intelligence, Plaintiff argues that the ALJ failed to mention WAIS testing showing borderline intellectual functioning. Although Plaintiff fails to cite to the record, the WAIS testing he refers to appears to be part of Dr. A. Elise Conroy's assessment. (Tr. 643). Notably, in regard to those test results, Dr. Conroy concluded, "the client's intellectual functioning places him in the borderline range." (Tr. 643).

A review of the record reveals that the ALJ properly considered Plaintiff's intelligence as a whole. The ALJ explicitly considered Dr. Conroy's opinion that Plaintiff had at least borderline intelligence. (Tr. 32, 651, 665). The ALJ also considered and discussed the opinion of Dr. Billie Jo Hatton, who found Plaintiff had low average intelligence. (Tr. 33, 639). On an examination of the record, the ALJ found "[t]he evidence as a whole shows borderline to mid-average intelligence." (Tr. 33).

While the ALJ did not explicitly cite to Plaintiff's IQ scores or the results of the WAIS testing, the decision shows that the ALJ considered Plaintiff's intelligence as a whole. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating "there is no rigid requirement that the

ALJ specifically refer to every piece of evidence in this decision," provided that the ALJ's decision is sufficient to enable the court to conclude that the ALJ properly considered the claimant's condition as a whole). Notably, the WAIS test results are not at all inconsistent with the ALJ's findings.

Indeed, the evidence as a whole (including the findings of Dr. Hatton and Dr. Conroy) supports the ALJ's conclusion that Plaintiff had borderline to mid-average intelligence, and the ALJ did not err in failing to explicitly discuss the WAIS testing.

**B.     The ALJ's Consideration of Plaintiff's Functional and Social Limitations**

Plaintiff next argues that the ALJ erred in failing to properly consider evidence relevant to Plaintiff's limitations for dealing with the public and dealing with co-workers.

Plaintiff acknowledges the ALJ's consideration of the opinion evidence of examining psychologists Dr. Conroy and Dr. Hatton, but argues that the ALJ's finding understates the opinions of various medical sources. For example, Plaintiff contends that the ALJ did not analyze an opinion by Dr. Meyers, a state agency psychological consultant, who opined that Plaintiff would have difficulty interacting appropriately with the general public and coworkers or peers. (Tr. 686). Plaintiff also points to Dr. Conroy's observations about Plaintiff's tendency to be belligerent, mood swings, and the possibility that Plaintiff would cause disruptions in the workplace. (Tr. 646). Plaintiff cites to Dr. Hatton's conclusion that the prognosis for Plaintiff's ability to maintain in a competitive work situation was guarded. (Tr. 640). Plaintiff also cites state agency evaluator Dr. O'Neill's opinion that Plaintiff was capable of "simple, non-production" tasks, that he would benefit from supervision, and had limited tolerance of stress, but could do fairly low-demand jobs. (Tr. 747).

On the whole, Plaintiff's argument amounts to little more than criticism that the ALJ did

not discuss every detail of the opinions of Drs. Meyers, Conroy, Hatton and O'Neil. Plaintiff does not actually argue that their opinions are inconsistent with the evidence as a whole, or that any specific aspect of the opinions is contradictory to the ALJ's finding. Rather, Plaintiff merely offers the vague argument that "the failure to weigh these opinions against other opinions in some cases, or even to consider these opinions, in other cases, is cause for remand." (Tr. 8).

As stated above, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. *See Dyer*, 395 F.3d at 1211. Rather, the ALJ's decision must be sufficient to enable the court to conclude that the ALJ properly considered the claimant's condition as a whole. *Id.*

Further, an ALJ determines a claimant's RFC based on all pertinent evidence in the record. *See* 20 C.F.R. § 404.1545(a)(1), (a)(3). This includes statements from medical sources (i.e. medical opinions). *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). When weighing opinions from non-treating sources, the ALJ considers the source's relationship with the claimant, the evidence supporting the opinion, its consistency with other evidence, the source's specialty, and other factors. *See* 20 C.F.R. § 404.1527(c). The regulations do not require the ALJ's RFC assessment to mirror any doctor's opinion. *See* 20 C.F.R. §§ 404.1513, 404.1545, 416.913; 416.945. Regarding consultative examiners, the Eleventh Circuit law does not require an ALJ to accord special deference to the opinion of a one-time examiner because the physician and patient do not share a longitudinal or treatment relationship, as contemplated by the regulations. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician.") (citation omitted). Furthermore, although State agency consultants are experts in disability evaluation, their findings are not binding on the ALJ. See 20 C.F.R. §§

404.1527(e)(2)(I), 416.927(e)(2)(I).   Therefore, neither the regulations nor the law of the Eleventh Circuit require the ALJ to adopt any doctor's opinions in its entirety

Here, upon a review of the record, it is apparent that the ALJ considered Plaintiff's condition as a whole, including limitations in his ability to interact with co-workers and the public, and that substantial evidence supports the ALJ's decision.

In June 2009, Dr. Meyers, a state agency psychological consultant, reviewed the record and found moderate limitations in both Plaintiff's ability to interact appropriately with the general public and his ability to get along with co-workers or peers without distracting them or exhibiting behavior extremes.   (Tr. 686).   In summarizing his functional ability assessment, Dr. Meyers opinioned, "[c]laimant retains the ability to perform simple, repetitive tasks and likely has abilities to perform tasks at higher levels in spite of the limitations noted."   (Tr. 687).

The ALJ explicitly considered the opinion of consultative psychologist, Dr. Hatton, who opined that Plaintiff retained adequate superficial social skills, although he would have difficulty interacting with others on a long term basis.   (Tr. 640).   The ALJ also noted Dr. Hatton's findings that Plaintiff was coherent, organized, and capable of simple math.   (Tr. 32).

Likewise, the ALJ explicitly considered the opinion of Dr. Conroy, who found Plaintiff was of at least borderline intelligence, logical thought content, and normal thought processes.   The ALJ also explicitly cited Dr. Conroy's opinion that Plaintiff could possibly be disruptive in the workplace, not receptive to criticism, and have personal relationship problems.   (Tr. 32, 655). The ALJ adopted Dr. Conroy's findings regarding Plaintiff's bipolar disorder.

Meanwhile, the ALJ stated that he was according substantial weight to the assessments of the state agency psychologists, as they were "well supported by the evidence of record, consistent with the examining psychologists' opinions and GAF scores, and consistent with each other."

(Tr. 33). The record confirms this conclusion. For example, Dr. O'Neill found that Plaintiff could experience some trouble with extensive interpersonal demands, but could relate on a basic level. (Tr. 743). Similarly, Dr. Meyers found moderate limitations in social interactions, but that Plaintiff was nonetheless able to perform simple, repetitive tasks. (Tr. 687).

Finally, although Plaintiff takes issue with the ALJ's failure to incorporate Dr. Stein's opinion that Plaintiff may need redirection multiple times, Dr. Stein's opinion overall supports the ALJ's decision. Dr. Stein reported that Plaintiff displayed symptoms possibly consistent with bipolar disorder, but showed no definite evidence of any major psychiatric disturbance other than amphetamine and cannabis dependence. (Tr. 780). Dr. Stein's opinion, also, is consistent with the ALJ's decision.

It is apparent that the ALJ's decision thoroughly considered Plaintiff's condition as a whole, and the ALJ determined that a frequent limitation for dealing with the general public and an occasional limitation for dealing with co-workers was appropriate. (Tr. 31). The evidence as a whole supports this conclusion, as well as the ALJ's finding that Plaintiff is capable of performing routine tasks where little initiative is required. (Tr. 31). Plaintiff has failed to prove that he was more limited than found by the ALJ, and substantial evidence supports the ALJ's findings regarding Plaintiff's RFC.

### C.   The ALJ's Reliance on the Vocational Expert's Testimony

Plaintiff next argues that the ALJ erred by relying on a response from a vocational expert to an incomplete hypothetical. Plaintiff contends that hypothetical questions to vocational experts must set out all the limitations and restrictions of the particular claimant, and that the ALJ erred by failing to include in the hypothetical all of the limitations noted by Drs. Conroy, Hatton, Stein, O'Neil, and Meyers.

- 9 -

As observed above, however, substantial evidence supports the ALJs findings regarding Plaintiff's RFC. The ALJ's RFC assessment need not mirror the opinion of any doctor, nor was he required to adopt all of the limitations the doctors assessed. *See Castle v. Colvin*, 557 F.App'x, 849, 853 (11th Cir. 2014). Here, the ALJ presented a thorough, comprehensive hypothetical to the vocational expert that specifically identified the functional limitations consistent with Plaintiff's RFC for a range of medium work. (Tr. 65). The vocational expert's testimony regarding the jobs that a person with Plaintiff's RFC could perform given those limitations constituted substantial evidence upon which the ALJ could rely. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ is not required to include findings in the hypothetical that he had properly rejected as unsupported. *Crawford* v. *Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004).

The Court finds that substantial evidence supports the ALJ's findings and his conclusion that the Plaintiff was not disabled within the meaning of the Social Security Act.

### IV.   CONCLUSION

For the reasons stated above, the ALJ'S decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The **Clerk is directed** to enter final judgment for the **Commissioner** and **close the file**.

**DONE** and **ORDERED** in Ocala, Florida on September 25, 2015.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties